hmg 12.11.23

✓ FILED    ___ ENTERED
___ LOGGED ___ RECEIVED

4:24 pm, Jan 04 2024

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

---

| | | | |
|---|---|---|---|
| *Colleen E. McGuinn*<br>*Assistant United States Attorney*<br>*Colleen.McGuinn@usdoj.gov* | *Mailing Address:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *Office Location:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *DIRECT: 410-209-4823*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-0716* |

December 13, 2023

VIA EMAIL

Mr. Nicholas Madiou, Esq.
6305 Ivy Lane #700
Greenbelt, MD 20770

> Re:   United States v. Stephawn Malik Watson, a/k/a "O-Dawg"
>        Crim. No. BAH-22-219 and BAH-22-084

Dear Mr. Madiou:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Stephawn Malik Watson (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by January 6, 2024, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense(s) of Conviction

1.      The Defendant agrees to plead guilty to Counts One, Twenty-Eight, and Forty-Two of the Superseding Indictment in Criminal No. BAH-22-219, which charge the Defendant with (a) Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349; (b) Wire Fraud, in violation of 18 U.S.C. § 1343; and (c) Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A; respectively. The Defendant also agrees to plead guilty to Count One of the Indictment in Criminal No. BAH-22-084, which charges the Defendant with Illegal Receipt of a Firearm by a Person Under Indictment, in violation of 18 U.S.C. §922(n) and 924(a)(1)(D). The Defendant admits that the Defendant is, in fact, guilty of these offenses and will so advise the Court.

### Elements of the Offense(s)

2.      The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Rev. May 2018

That on or about the time periods alleged in the Superseding Indictment in Criminal No. BAH-22-219, in the District of Maryland,

*Count One (Conspiracy to Commit Wire Fraud)*

    a.  Two or more persons agreed to try to accomplish a common and unlawful plan to commit a fraud crime listed in Title 18 Chapter 63, as charged in the Indictment (*e.g.*, Wire Fraud, in violation of 18 U.S.C. § 1343, as defined in subparagraphs c through e);

    b.  the Defendant knew the unlawful purpose of the plan and willfully joined it; and

*Count Twenty-Eight (Wire Fraud)*

    c.  the Defendant devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises;

    d.  the Defendant acted with the intent to defraud;

    e.  in advancing, furthering, or carrying out the scheme, the Defendant caused any writing, signal, or sound to be transmitted by means of a wire in interstate or foreign commerce; and

*Count Forty-Two (Aggravated Identity Theft)*

    f.  the Defendant knowingly transferred, possessed, or used a means of identification of another person;

    g.  knowing that the means of identification belonged to another actual person;

    h.  during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), to wit: wire fraud conspiracy or wire fraud, in violation of 18 U.S.C. §§ 1349 or 1343; and

    i.  that the Defendant acted without lawful authority.

And, that on or about the date alleged in the Indictment in Criminal No. BAH-22-084, in the District of Maryland,

*Count One (Illegal Receipt of a Firearm by a Person Under Indictment)*

    j.  the Defendant willfully received a firearm;

    k.  at the time he received the firearm, the Defendant was under indictment for a crime punishable by imprisonment for a term of exceeding one year; and

Rev. August 2018

l.    the firearm received was transported in interstate or foreign commerce.

Penalties

3.    The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| BAH-22-219 Count | Statute | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 1349 | 20 years | 3 years | $250,000 or twice the gross gain or loss from the offense | $100 |
| 28 | 18 U.S.C. § 1343 | 20 years | 3 years | $250,000 or twice the gross gain or loss from the offense | $100 |
| 42 | 18 U.S.C. § 1028A | 2 years mandatory, consecutive | 1 year | $250,000 | $100 |

| BAH-22-084 Count | Statute | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 922(n) | 5 years | 3 years | $250,000 | $100 |

a.    Prison:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.    Supervised Release:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.    Restitution:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.    Payment:  If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

Rev. August 2018

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If

Rev. August 2018

4

the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551 through 3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Rev. August 2018

Factual and Advisory Guidelines Stipulation

6.        This Office and the Defendant stipulate and agree to the Stipulation of Facts set forth in Attachment A, which is incorporated by reference herein.

Group One: BAH-22-219, Counts One and Twenty-Eight:

a.        This Office and the Defendant agree that the applicable base offense level is **7** pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 2X1.1(a) and 2B1.1(a)(1).

b.        The parties further agree that there is an increase of **16 levels**, pursuant to U.S.S.G. § 2B1.1(b)(1)(I), because the loss exceeded $1,500,000 but did not exceed $3,500,000. (Subtotal: 23).

c.        The parties further agree that there is an increase of **2 levels**, pursuant to U.S.S.G. § 2B1.1(b)(2)(A), because the offense involved 10 or more victims.  (Subtotal: 25)

Group Two:   22-084, Count One (Illegal Receipt of a Firearm by a Person Under Indictment):

d.        This Office and the Defendant further agree that the applicable base offense level is 14 pursuant to U.S.S.G. § 2K2.1(a)(5).

e.        ~~The parties further agree there is an increase of **2 levels**, pursuant to U.S.S.G. § 2K2.1(b)(4), because the matter involved 8 to 24 guns.  (Subtotal 16).~~

*Grouping:*

f.        Group One has the highest level (25) and Group Two is discounted because it is 9 or more levels less serious Group One pursuant to U.S.S.G. § 3D1.4(c). (Subtotal 25).

g.        This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's affirmative acceptance of personal responsibility for the Defendant's criminal conduct.  This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty.  This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

h.      Thus, the parties anticipate a final offense level of **22** for Counts One and Twenty-Eight in BAH-22-219 and Count One in BAH-22-084.

### BAH-22-219, Count Forty-Two (Aggravated Identity Theft)

i.      Pursuant to USSG §2B1.6, the guideline sentence for Count Forty-Two is two years, to be imposed to run consecutively to any terms of imprisonment imposed for Counts One and Twenty-Eight in BAH-22-219 and Count 1 in BAH-22-084.

7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Rule 11 (c)(1)(C)

9.      The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) **that a sentence of no more than sixty-five months of incarceration is the appropriate disposition of this case** taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, the mandatory minimum imposed by statute, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

### Obligations of the Parties

10.      At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

Rev. August 2018

7

## Waiver of Appeal

11.    In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.    The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Restitution

12.    The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses, which the parties agree is at least $1.5 million, which the government will not oppose being joint and several with any co-defendants also ordered to pay restitution for the conduct described herein. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

Rev. August 2018

## Forfeiture

13.    The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense of conviction

14.    Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in anything that constitutes money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

    a.    red iPhone XR, IMEI 356438106841051;
    b.    black iPhone 8 plus, serial number C39VVXZ3JCLY

15.    The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

16.    The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

17.    The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Abandonment

18.    The Defendant knowingly and voluntarily waives any right, title, and interest in the following property (the "Abandoned Property") and consents to its federal administrative disposition, official use, and/or destruction:

    a.    a black Taurus 9mm handgun bearing serial number TMR88351; and
    b.    Apple iPhone IMEI 357814437127270

Rev. August 2018

9

19.     The Defendant understands that he would have a right to file a claim to the Abandoned Property under 41 C.F.R. § 128-48.102-1 and waives his right to claim the Abandoned Property under 41 C.F.R. § 128-48.503.  The Defendant agrees not to contest the vesting of title of the Abandoned Property in the United States Government and agrees to unconditionally release and hold harmless the United States Government, its officers, employees, and agents, from any and all claims, demands, damages, causes of actions, suits, of whatever kind and description, and wheresoever situated, that might now exist or hereafter exist by reason of or growing out of or affecting, directly or indirectly, the seizure or waiver of ownership interest in the Abandoned Property.  The Defendant agrees to execute any documents as necessary to the waiver of right, title and interest in the Abandoned Property, including any forms necessary to effect the Defendant's waiver of ownership interest.

## Defendant's Conduct Prior to Sentencing and Breach

20.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

21.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.  A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea.  The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement.  In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

22.     The Court is not a party to this Agreement.  The sentence to be imposed is within the sole discretion of the Court.  The Court is not bound by the Sentencing Guidelines stipulation in this Agreement.  The Court will determine the facts relevant to sentencing.  The Court is not required to accept any recommendation or stipulation of the parties.  The Court has the power under Rule 11(c)(5) to reject the plea agreement entered into under Rule 11(c)(1)(C).  Neither the

Rev. August 2018

prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

23.    This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

Colleen Elizabeth McGuinn
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

Jan 4, 2023
Date

Stephawn Malik Watson

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

January 4, 2024
Date

Nicholas Madiou, Esq.

Rev. August 2018

11

## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that the following facts are true and accurate, and that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The defendant Stephawn Malik Watson a/k/a "O-Dawg" (the "Defendant"), age 28, was a resident of District Heights, Maryland.

### BAH-22-219

Between March 2020 and October 2021, in the District of Maryland and elsewhere, the Defendant knowingly and willfully conspired and agreed with others to commit wire fraud, in violation of 18 U.S.C. § 1343, by devising and executing a scheme to defraud the United States, multiple financial institutions, and multiple states, including California and Maryland, and causing the transmission of interstate and international wire communications, for the purpose of executing the fraud scheme. The object of the fraud conspiracy and scheme to defraud was to obtain money by filing fraudulent unemployment insurance ("UI") claims using the personally identifying information of victims and obtaining money from the United States government.

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 to provide emergency financial assistance to Americans suffering from the economic consequences of COVID-19. From March 2020 to October 2021, the Defendant worked with his co-conspirators to fraudulently obtain COVID-19 related UI benefits. The Defendant and his co-conspirators used electronic messages, phone calls, electronic mail and other means to aggregate and exchange the personally identifiable information ("PII") of victims with each other, created fictitious or false email address and phone numbers for the victims, and used the fake emails and phone numbers in the fraudulent UI applications. The conspiracy and scheme to defraud victimized more than 10 real persons, who lived throughout the United States. Through the conspiracy and scheme to defraud, the members of the conspiracy fraudulently obtained **at least $1.5 million** from victim state agencies. The Defendant knowingly and willfully joined the conspiracy to accomplish its unlawful object(s) and with the intention of sharing personal identifiable information of the victims with his co-conspirators and obtaining money by filing for fraudulent UI benefits in those victims' names.

On July 27, 2020, the Defendant and Co-Conspirator One were communicating through text messages. The Defendant and Co-Conspirator One began discussing the Defendant's new iPhone, and the Defendant requested Co-Conspirator One set up his new Apple ID for him. Co-Conspirator One then texted the Defendant back with the email address "TILLKILL305@gmail.com" for his Apple ID along with a password. The Defendant's Apple ID was then used to file an insurance claim in Arizona in the name of victim M.Q. on the same day.

Rev. August 2018

On August 3, 2020, the Defendant and Co-Conspirator One were communicating through text message. Co-Conspirator One asked the Defendant to contact Co-Conspirator Two to obtain PII so that the Defendant and Co-Conspirator One could apply for benefits in another person's name. The Defendant did text Co-Conspirator Two, asking to "send one" when Co-Conspirator Two had a chance. Co-Conspirator Two then sent the PII of victim K.F., specifically K.F.'s name, date of birth, and social security number. Between August and December, 2020, Co-Conspirator Two was seen withdrawing from a Bank of America UI account in the name of K.F. The Defendant then texted the PII of K.F. to Co-Conspirator One

On December 26, 2020, a group text conversation occurred between the Defendant, Co-Conspirator Two, Co-Conspirator Three, Co-Conspirator Four and Co-Conspirator Five. In that conversation it was discussed that it was the last day to file claims in Maryland and California and that they need more ids and socials to get more done that final day.

On February 16, 2021, Anne Arundel County Police executed a search and seizure warrant at the Defendant's residence in Laurel, MD, where he lived with Co-Conspirator Three. Co-Conspirator Four was also present. In Co-Conspirator One's bedroom, investigators seized 11 UI debit cards including a card in the name of victim M.Q. Those 11 cards, which included one in the Defendant's name accounted for a depletion of over $594,000 in benefits. The UI benefits card in the Defendant's name was used to obtain over $36,000 in fraudulent benefits. Just a few days after the warrant, on February 23, 2021, the Defendant sent a text to Co-Conspirator Two asking if Co-Conspirator Two had filed UI benefits for the Defendant.

Bank of America UI records revealed that the Defendant and his co-conspirators are connected to multiple UI profiles of actual victims whose identities were used to open accounts and obtain benefits without their permission. These victims are tied to texts and calls between the Defendant and his co-Conspirators over several months. The Defendant and his co-conspirators personally conducted transactions involving at least $1.5 million in UI benefits funds.

BAH-22-084

On September 18, 2020, the Defendant appeared in the Circuit Court for Prince George's County in Upper Marlboro, Maryland, for the case *State of Maryland v. Stephawn Malik Watson*, 20-0836X. At the September court appearance for his arraignment, the Defendant was advised of the indictment returned against him and that he was charged with Illegal Possession of a Firearm in violation of Maryland law. The Defendant was advised that the maximum penalty for that offense was 5 years. The Defendant was also advised that he was charged with Carrying a Loaded Firearm on his Person which carried a maximum sentence of three years.

On January 11, 2022, at approximately 7:45 p.m., a member of the Cumberland Police Department was on patrol in the area of Henderson Avenue and Valley Street in Cumberland, Allegany County, Maryland. The officer observed a Hyundai with Virginia tags driving with an inoperable headlight. The officer initiated a traffic stop. The driver was identified as Makayla Richardson, and a strong odor of raw and burnt marijuana was coming from the car. The front seat passenger was identified as the Defendant. The Defendant and the driver were questioned about the odor of marijuana, and the driver gave the officer two rolled joints. The Defendant and

Rev. August 2018

driver were asked to exit the vehicle so that a search could be conducted. A handgun was found on the passenger front seat with the Defendant had been seat. The handgun was a Taurus 9mm handgun, serial number TMR88352 with a bullet in the chamber and fifteen rounds in the magazine. The Defendant admits that he knowingly and willfully possessed the Taurus 9mm handgun at the time of the traffic stop, while knowing that he had been charged by indictment in Criminal No. 20-0836X.

Taurus firearms are manufactured in Brazil. The handgun had been reported stolen in June 2020 by the owner, S.M., who resided in Hampton, Virginia. The victim did not know Defendant, and he did not have permission to possess her firearm.

SO STIPULATED:

Colleen Elizabeth McGuinn
Assistant United States Attorney

I have reviewed the foregoing Statement of Facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as a part of my plea agreement with the government in this case.

Stephawn Malik Watson
Defendant

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including this Factual Stipulation with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

Nicholas Madiou, Esq.
Counsel for Defendant

Rev. August 2018